

FILED
2017 May-25  PM 02:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| SARAH BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| LOWES COMPANIES, INC., CIGNA | ) | |
| GROUP INSURANCE COMPANY, INC., | ) | |
| SEDGWICK CLAIMS MANAGEMENT | ) | |
| SERVICES, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

### **NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1332, 1441, and 1446, Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") hereby files its Notice of Removal of this action from the Circuit Court of St. Clair County, Alabama, where it is now pending, to the United States District Court for the Northern District of Alabama, Middle Division.  As grounds for the removal of this action, Sedgwick respectfully states as follows:

## I.   **INTRODUCTION.**

1.   On August 29, 2014, Plaintiff Sarah Brown filed a workers' compensation lawsuit in the Circuit Court of St. Clair County, Alabama, styled *Sarah Brown v. Lowes Companies, Inc., et al.*, Civil Action No. CV-14-900291. (Complaint, Exhibit "1").  Specifically, Plaintiff alleged she injured her back on or

about May 19, 2014 in the line and scope of her employment at Co-Defendant Lowe's Companies, Inc. ("Lowe's").[1]  (*Id.* at ¶ 6-7).  Plaintiff sought damages for medical expenses and permanent partial or permanent total disability in her workers' compensation claim. (*Id.* at ¶ 5-6).

2.      On March 22, 2017, Plaintiff filed an Amended Complaint.  (Exhibit "2").  The Amended Complaint asserts claims for Workers' Compensation (Count I), Retaliatory Discharge (Count II), and Outrage (Count III). (*Id.*)

3.      On April 19, 2017, Sedgwick filed a Motion to Sever the tort of outrage claim from the workers' compensation and retaliatory discharge claims. (Exhibit "3").  On May 9, 2017, the Circuit Court of St. Clair County entered an Order granting the Motion to Sever. (Exhibit "4").  The Court gave Plaintiff seven (7) days to pay a filing fee and fee for a jury demand. (*Id.*)  The Court directed the Clerk of the Court to assign a new Case Number to the tort of outrage claim. (*Id.*)  Thereafter, on May 17, 2017, the Clerk of the Court assigned a new Case Number to the tort of outrage claim. (Exhibit "5").  The new Case Number is CV-2017-000071. (*Id.*)  A true and correct copy of all process, pleadings, and orders served on Sedgwick in the new action is attached as Exhibit "6."[2]

---

[1] Lowe's should correctly be identified as Lowe's Companies, Inc.

[2] Sedgwick will also provide the Court with a copy of all process, pleadings, and orders filed in the workers' compensation action upon the Court's request.

4.      On May 24, 2017, the claims against Co-Defendant Cigna Group Insurance Company, Inc. were dismissed.   (May 24, 2017 Order, attached as Exhibit "7").

5.      Sedgwick denies each and every material allegation of wrongdoing asserted against it in the Amended Complaint.   Because, however, complete diversity of citizenship exists between Plaintiff, Lowe's, and Sedgwick, and because the amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs, this Court possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1332, 1441, and 1446.

6.      Removal is timely because this Notice is filed within thirty (30) days after entry of the St. Clair County Circuit Court's Order severing the tort of outrage claim from the workers' compensation and retaliatory discharge claims and the Clerk of the Court's assignment of a new Case Number.  28 U.S.C. § 1446(b).  The Circuit Clerk of St. Clair County has been notified of this removal.

## II.   **LEGAL ARGUMENT IN SUPPORT OF THIS COURT'S REMOVAL JURISDICTION.**

7.      This removal is proper pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because there exists complete diversity of citizenship between Plaintiff, Lowe's, and Sedgwick and the amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs.   Removal is appropriate in "any civil action brought in a State Court of which the district courts

of the United States would have original jurisdiction." 28 U.S.C. § 1441(a). The District Courts of the United States have original jurisdiction over this matter because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the matter is between "citizens of a State and citizens or subjects of a foreign state...." 28 U.S.C. § 1332(a)(2). This removal is timely because it was filed within thirty (30) days of the date Sedgwick first received a document providing the basis for removal. 28 U.S.C. § 1446(b).

8.   The United States District Court for the Northern District of Alabama, Middle Division, encompasses St. Clair County, the county in which the State Court action is now pending. Thus, this Court is the proper venue for this action pursuant to 28 U.S.C. § 81(b)(3) and 28 U.S.C. § 1441(a).

## III.   DIVERSITY JURISDICTION – 28 U.S.C. § 1332.

### A.   Complete Diversity Exists.

9.   Plaintiff is a resident of the State of Alabama.

10.   Sedgwick is incorporated under the laws of the State of Illinois with its principal place of business in Memphis, Tennessee. Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." As such, Sedgwick is a citizen of Illinois and Tennessee. (*Id.*)

11.     Co-Defendant Lowe's is incorporated under the laws of the State of North Carolina with its principal place of business in Mooresville, North Carolina.

## B.     The Amount In Controversy Exceeds The Sum Of $75,000.

12.     A review of the Amended Complaint establishes that the amount in controversy well exceeds the jurisdictional threshold of $75,000, exclusive of interest and costs.  In this respect, Plaintiff makes a specific monetary demand for One Million ($1,000,000) Dollars in damages, to include punitive damages and damages for pain and mental anguish.  (Amended Complaint at p. 9).  Moreover, nowhere in the Amended Complaint does Plaintiff limit or attempt to limit the amount of damages she seeks or will accept for her claim.  (*Id.*)

13.     With respect to the amount in controversy, the United States Supreme Court has held as follows:

> In sum, as specified in § 1446(a), a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c) (2)(B) only when the plaintiff contests, or the court questions, the defendant's allegations.

*Dart Cherokee Basin Op. Co. v. Owens*, __ U.S. __, 135 S. Ct. 547, 554 (2014).

14.     Based on the fact Plaintiff seeks damages of One Million ($1,000,000) Dollars, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Thus, jurisdiction is proper in this Court.  As such, removal is

proper pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because the amount in controversy element is satisfied.

### C.   Notice Of Removal Was Timely.

15.   The Circuit Court of St. Clair County entered an Order on May 9, 2017 granting Sedgwick's Motion to Sever the tort of outrage claim from the workers' compensation and retaliatory discharge claims and the Clerk of the Court assigned a new Case Number on May 17, 2017.   (Exhibits "4" and "5").   Consistent with the 28 U.S.C. § 1446 and the Federal Rules of Civil Procedure, this Notice of Removal is filed within thirty (30) days of that date.

16.   Section 1446(c)(1) also states that a matter may not be removed under subsection (b)(3) on the basis of diversity jurisdiction more than one year after the commencement of the case.   28 U.S.C. § 1446(c)(1).   The Amended Complaint was filed on March 22, 2017.   (Exhibit "2").   Sedgwick filed this Notice of Removal within one year of the commencement of this action.   (*Id.*)   No previous application for removal has been made.

17.   Lowe's consents to this Notice of Removal and is expected to file a Notice of Joinder hereto.

## IV.   CONCLUSION.

18.   This Notice of Removal has been timely filed within thirty (30) days of the severance of the workers' compensation and retaliatory discharge claims, the

amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs, and complete diversity of citizenship exists between the Parties hereto.

19.     A true and correct copy of this Notice of Removal has been served on Plaintiff and Lowe's, and filed with the Circuit Court of St. Clair County.

20.     The prerequisites for removal under 28 U.S.C. § 1441 have been met.

21.     All Defendants consent and join in this Removal.

22.     Sedgwick respectfully requests the opportunity to brief and argue before this Honorable Court any issue or question concerning the removal of this case in the event remand is sought by Plaintiff or otherwise visited by the Court.

WHEREFORE, PREMISES CONSIDERED, Defendant Sedgwick Claims Management Services, Inc. respectfully requests that the above referenced case, now pending in the Circuit Court of St. Clair County, Alabama, be removed to the United States District Court for the Northern District of Alabama, Middle Division.

Respectfully Submitted,

M. WARREN BUTLER (ASB-3190-R56M)
STEPHEN W. STILL, JR. (ASB-1670-P64S)
STARNES DAVIS FLORIE LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama 35259-8512
Telephone:  (205) 868-6000
Fax:  (205) 868-6099
E-mail:  mwb@starneslaw.com

7
{B2467242}

E-mail:  sws@starneslaw.com

OF COUNSEL:
STARNES DAVIS FLORIE LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama 35259-8512
Telephone:  (205) 868-6000
Fax:  (205) 868-6099

## CERTIFICATE OF SERVICE

I hereby certify on May 25, 2017, I filed the foregoing with the Clerk of the Court and served a copy on the following by U.S. Mail, postage prepaid:

Tommy Allen French, Esq.
Robert B. French, Jr., P.C.
P.O. Box 680596
Fort Payne, AL  35968

Christopher E. Dorough, Esq.
Carr Allison
100 Vestavia Parkway
Birmingham, AL  35216

Charles A. Stewart III, Esq.
Bradley Arant
445 Dexter Avenue, Suite 9075
Montgomery, AL  36104

Of Counsel

# EXHIBIT
## "1"

DOCUMENT 2

ELECTRONICALLY FILED
8/29/2014 8:31 AM
75-CV-2014-900291.00
CIRCUIT COURT OF
ST. CLAIR COUNTY, ALABAMA
ANNETTE MANNING, CLERK

## IN THE CIRCUIT COURT OF
## ST. CLAIR COUNTY, ALABAMA

| | | |
|---|---|---|
| **SARAH BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** _____ |
| | ) | |
| **LOWES HOME CENTERS, LLC.,** | ) | |
| **its Agents, Parent Companies or** | ) | |
| **Subsidiaries; CIGNA HEALTH** | ) | |
| **MANAGEMENT, INC., its Agents** | ) | |
| **Parent Companies or Subsidiaries, and** | ) | |
| **SEDGWICK CLAIMS MANAGEMENT** | ) | |
| **SERVICES,INC., its Agents, Parent** | ) | |
| **Companies or Subsidiaries,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### Complaint for Worker's Compensation Benefits

**COMES NOW** the Plaintiff, Sarah Brown, by the undersigned attorneys and submits her Complaint against the Defendants as follows:

### STATEMENT OF THE PARTIES

1.    Plaintiff Sarah Brown (hereinafter referred to as "Brown"), is an individual over the age of nineteen (19) years and a resident of 3069 Hamilton Court, Pell City, St. Clair County, Alabama. Brown at all times complained of herein, was an employee of the Defendant Lowe's Home Centers, Inc., or Lowe's Companies, Inc. and was injured during the line and scope of her employment.

2.    Defendant Lowe's Home Centers, LLC. is a limited liability corporation that does business by a variety of names and entities, (hereinafter all referred to as "Lowe's"). It is a foreign corporation of Mooresville, North Carolina, and was transacting business in the State of Alabama at all times complained herein. This defendant employed plaintiff and was subject to the Alabama Workmen's Compensation Act.

3.     Defendant CIGNA Group Insurance Company, Inc., or CIGNA Health Management, Inc. is a corporation that does business under a variety of names and entities (hereinafter referred to as "CIGNA") with its principal place of business being Philadelphia, Pennsylvania, and is authorized and doing business in this state, and at all times mentioned herein was, and is now, the worker's compensation insurance carrier for defendant employer Lowe's.

4.     Defendant Sedgwick Claims Management Services, Inc. is a corporation with its principal place of business being Memphis, Tennessee, and authorized and qualified to do business in Alabama.  It was the claims management company that investigated and denied the plaintiff's claim for workmen's compensation.

## <u>*COUNT ONE - WORKER'S COMPENSATION*</u>

5.     The Plaintiff repeats, realleges and incorporates by reference the preceding allegations as if more fully set out herein.

6.     On or about the **27th. day of January, 2012**, Brown was employed by Defendant Lowe's as a Package Handler.  Later she was promoted to an Outdoor Power Equipment Specialist at wages of $16.05 per hour.

7.     On the **19th day of  May, 2014**, while so employed and engaged in the business of Lowe's, while acting within the line and scope of her employment, Brown suffered an injury which arose out of and in the course of her employment that resulted in the disability hereinafter alleged, by lifting an air conditioner that weighed more than 125 pounds while in an awkward lifting position.

8.     The plaintiff was aware that she had injured her back and immediately reported her accident to her supervisor.

9.     The parties are subject to, and their relationship is governed by, the provisions of the Alabama Workmen's Compensation Act.  All parties are subject to the jurisdiction of the

DOCUMENT 2

Circuit Court of St. Clair County, Alabama.

### *EVENTS OF INJURY*

10.     The Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations as if more fully set out herein.

11.     Brown sustained an injury, arising out of and during the course of her employment by Lowes as follows:

a.     Plaintiff's job required her to have certain skills including lifting up to 75 pounds. On Monday, Wednesday and Friday she unloaded the morning trucks. The trucks contained lawn mowers, air conditioners and overall store freight. Her job was to remove the freight out of the truck-trailer, unload the pallet and distribute the products to the retail bins or shelves.

b.     Three weeks out of the month she was required to report to work at 4:00 A.M. Frequently, she would not have help until 8:00 A.M. Many times, by the time the help arrived, plaintiff had unloaded the truck.

c.     Plaintiff complained regularly to the department manager that she needed help. She complained to the zone manager and nothing happened. She continued to work each day until 1:30 or 2:30. Often she worked more than 40 hours a week.

d.     Eventually, she was assigned a pregnant helper by the department manager who was on vacation most of the time. When he was there he did not help her very often. The most assistance he would give her with the heavy work was about 2 hours. The department continued to be grossly understaffed.

e.     On Monday, **May 19, 2014,** the plaintiff arrived at work at 4:00 A.M. as the only employee in her department. At 7:30 A.M. the pregnant associate arrived. Brown had already handled all the small merchandise.

f.     It was time to move the heavy products. The pregnant woman could not help. Therefore, plaintiff was forced to move the bigger merchandise. Other department employees had worked all night taking inventory. There was no one to ask for help.

g.      Plaintiff's goal was to place one air conditioner in a top bin and bring down other units to a lower level. She had to use an elevator machine similar to a fork lift - an order picker. The pregnant woman was acting as plaintiff's spotter and blocking off the isles.

h.      At approximately 8:30 A.M. plaintiff was 10' up on isle 24, at the air conditioner's top stock bin. She had to unload an 18,500 BTU Frigidaire Air Conditioner weighing 125+ pounds. She was on a squatting position and stooping and turning to place the unit in the top bin. As she was rotating, she felt a sudden "pop" in her back. When she stood up, she felt immediate pain and numbness down the back of her legs.

i.      She lowered the order picker and told the spotter that she had felt a "pop" in her back and a burning sensation in her legs. The spotter was on the phone to her son's day care because he was sick.

j.      At that point the Human Resources Manager came up and asked plaintiff what was wrong as she was in obvious pain. Plaintiff told him what had happened and that she needed to go to a doctor. He asked her if it was work related. She said yes. He told her to keep him informed and promptly walked away.

k.      Plaintiff sent a text message to her zone manager and told her what had happened. She then clocked out at 10:20 A.M. and went to see a chiropractor at 10:45. He did x-rays and range of motion tests. He told the plaintiff that she was too inflamed for him to help her. The chiropractor performed a shock treatment and said that the x-rays indicated at least one herniated disc. He sent her home for bed rest. She returned to him 3 more times the following week for tension release of the back treatments. This treatment did not help. Plaintiff felt worse and worse each time she got off the table.

l.      Plaintiff returned to Lowes on **May 20th** and filed for workmen's compensation.

The HR Manager told her that it was between her and Sedgwick. He would write the accident up and send it to Sedgwick. Because she had been to an unauthorized doctor, Lowes would not pay him, but Sedgwick would be in contract with her. When she heard nothing from Sedgwick she returned to the chiropractor.

      m.    **May 23, 2014,** plaintiff was called by Sedgwick and told that Sarah Moore was her claims adjuster. Plaintiff gave a full and complete statement to Moore who said that she would do further investigation.

      n.    **May 26, 2014,** the plaintiff received her paper work to fill out.

      o.    **May 30, 2014,** Moore's supervisor, Darshae (LNU) talked with plaintiff via telephone and informed her that as of the 30th her claim had been closed because an employee had told them that plaintiff had been previously complaining about her back. Plaintiff denied this assertion as she had rarely talked with anyone at Lowes.

      p.    **July 3, 2014,** plaintiff went to see the HR director. He repeated that she should see Sedgwick. Representatives of Sedgwick continued to deny medical care and compensation to plaintiff.

      12.    Plaintiff has been temporarily totally disabled since her accident and his lived in constant back pain since that time. Being forced to go to the emergency room due to pain, doctors there confirmed that the plaintiff is suffering from one herniated disc and three bulging discs.

      **WHEREFORE, PREMISES CONSIDERED** the plaintiff respectfully requests the following:

      A.    An immediate order requiring the defendants to afford the plaintiff the proper medical treatment as required by the Alabama Worker's Compensation Act as she is in dire need of surgical attention;

B.    An immediate order requiring the defendants pay the plaintiff compensation benefits due plaintiff as provided by the Alabama Worker's Compensation Act;

C.    Upon final hearing of this matter grant unto the plaintiff permanent partial or permanent total disability benefits as provided by the Alabama Worker's Compensation Act.

D.    Grant unto the plaintiff such other, further and different relief, as the court may deem proper under the alleged circumstances.

Respectfully Submitted this the 21st day of August, 2014.

ROBERT B. FRENCH, JR., P.C.

s/Robert B. French, Jr.
Attorney for the Plaintiff

Before me, the undersigned authority, personally appeared Sarah Brown, who being by me first duly sworn, states that she has read the foregoing complaint and the facts and matters alleged therein are true.

Sarah Brown, Affiant - Plaintiff

**SWORN** and **SUBSCRIBED** to before me this the 21st day of August, 2014.

Notary Public
My Commission Exp.: 2/5/17

ROBERT B. FRENCH, JR., P.C.
308 Alabama Ave. SW
Fort Payne, AL 35967

256 845-2250
256 845-4548 facsimile
rbfrench@bellsouth.net

# EXHIBIT
## "2"

DOCUMENT 25

ELECTRONICALLY FILED
3/22/2017 12:30 PM
75-CV-2014-900291.00
CIRCUIT COURT OF
ST. CLAIR COUNTY, ALABAMA
ANNETTE MANNING, CLERK

# IN THE CIRCUIT COURT OF
# ST. CLAIR COUNTY, ALABAMA

SARAH BROWN,                          )
                                      )
    Plaintiff,                      )
                                      )
    v.                              )    Civil Action No.: <u>CV 2014-900291</u>
                                      )
LOWES COMPANIES, INC.,                )
its Agents and any and all Subsidiaries; )
CIGNA GROUP INSURANCE                  )
COMPANY, INC. its Agents and any      )
and all Subsidiaries,  and SEDGWICK   )
CLAIMS MANAGEMENT SERVICES, )
INC., its Agents and any and all its  )
Subsidiaries,                         )
                                      )
    Defendants.                     )

---

## <u>AMENDED</u> COMPLAINT FOR WORKER'S COMPENSATION BENEFITS

## RETALITORY DISCHARGE and WILLFUL OUTRAGEOUS CONDUCT

---

**COMES NOW** the Plaintiff, Sarah Brown, by her attorneys of record, and submits her

**Amended** complaint against the defendants:

### STATEMENT OF THE PARTIES

1.    Plaintiff Sarah Brown (hereinafter referred to as "Brown"), is an individual

over the age of nineteen (19) years and a resident of 3069 Hamilton Court, Pell City, St.

Clair County, Alabama. Brown at all times complained of herein, was an employee of the

Defendant Lowe's Companies, Inc. and was injured during the line and scope of her

employment.

2.    Defendant Lowe's Companies, Inc. a corporation (hereinafter referred to as

"Lowe's"), is a foreign domestic corporation of Mooresville, North Carolina transacting

1

business in the State of Alabama at all times complained of herein. This defendant employed the plaintiff and was subject to the Alabama Workmen's Compensation Act.

3.      Defendant CIGNA Group Insurance Company, Inc., is a corporation with its principal place of business being Philadelphia, Pennsylvania, and authorized and doing business in this state, and at all times mentioned herein was, and is now, the worker's compensation insurance carrier for defendant employer Lowe's Companies, Inc.

4.      Defendant Sedgwick Claims Management Services, Inc. is a corporation with its principal place of business being Memphis, Tennessee, and authorized and qualified to do business in Alabama. It was the claims management company that investigated and denied the plaintiffs claim for workmen's compensation benefits.

### COUNT ONE: WORKER'S COMPENSATION

5.      The plaintiff repeats, realleges and incorporates by reference the preceding allegations as if more fully set out herein.

6.      On or about the 27th day of January 2012, Brown was employed by Defendant Lowe's as a Package Handler. Later she was promoted to an Outdoor Power Equipment Specialist at wages of $16.05 per hour.

7.      On the 19th day of May, 2014, while so employed and engaged in the business of Lowe's, and while acting within the line and scope of her employment, Brown suffered an injury that arose out of, and during the course of her employment, which resulted in the disability hereinafter alleged. She was injured lifting an air conditioner that weighed more than 125 pounds while in an awkward lifting position.

8.      The plaintiff was aware that she had injured her back and immediately reported her accident to her supervisor.

2

9.      The parties' relationship is governed by, the provisions of the Alabama Workmen's Compensation Act. All parties are subject to the jurisdiction of the Circuit Court of St. Clair County, Alabama.

### EVENTS OF INJURY

10.     The plaintiff repeats, realleges and incorporates by reference all of the preceding allegations as if more fully set out herein.

11.     Brown sustained an injury as follows:

Plaintiffs job required her to have certain skills including lifting up to 75 pounds. On Monday, Wednesday and Friday she unloaded the morning trucks. The trucks contained lawn mowers, air conditioners and overall store freight. Her job was to bring the freight out of the truck-trailer, unload the pallet, and distribute the products onto the retail shelves. Three weeks out of the month she was required to report to work at 4:00 A.M. Frequently, she would not have help until 8:00 A.M. Very often, by the time the other employees arrived to help, plaintiff had the truck(s) unloaded.

Plaintiff complained to the department manager that she needed help. She complained to the zone manager. Nothing happened. She continued to work each day until 1:30 or 2:30 P.M., often working more than 40 hours a week.

On rare occasions, the department manager assisted plaintiff with the heavy work. The department manager assigned the plaintiff a helper who was very pregnant and relatively useless.

On Monday, May 19, 2014, the plaintiff arrived for work at 4:00 A.M. She was the only employee in her department. By 7:30 A.M. when the pregnant woman arrived, Brown had handled all the smaller merchandise. Although it was time to move the heavy products,

3

the pregnant woman could not help. The plaintiff had to singlehandedly move the bigger merchandise. There was no one available to ask for help.

Plaintiff's goal was to place one air conditioner on a top shelf and bring down another unit to a lower level. She had to use an elevator machine, similar to a forklift, called an "order picker." The pregnant woman was supposed to act as a spotter blocking the isles.

At approximately 8:30 A.M. the plaintiff was on the order picker, 10' up on isle 24, at the air conditioner's top stock bin. She had to unload an 18,500 BTU Frigidaire Air Conditioner weighing 125 pounds. She was in a squatting position turning to place the unit on top of stock on the bin shelf. As she was rotating, she felt a sudden "pop" in her back. When she stood up, she felt immediate pain radiating down the back of her legs.

She lowered the order picker and told the pregnant spotter that she had felt a "pop" in her back and a burning sensation in her legs. This employee was on the phone trying to contact her son's day care because he was sick. Apparently, she did not hear plaintiff nor understand the problem. She had been inattentive during the entire episode.

At that point the Human Resources Manager came up and asked plaintiff what was wrong as she was in obvious pain. Plaintiff told him what had happened and that she needed to go to a doctor. Even though she had carefully explained what had just happened, he asked her if it was work related. She said yes. He told her to keep him informed, and walked away. He did not give her instructions as to filling out an accident report nor tell her a company- approved physician for her to visit. He acted as if there had been no accident nor injury.

Plaintiff sent a text message to her zone manager outlining what had happened. She

4

then clocked out at 10:20 A.M. and went to see a chiropractor at 10:45 A.M. He did x-rays and range of motion tests. He told the plaintiff that she was too inflamed for him to help her.

The chiropractor performed a shock treatment and said that the x-rays indicated at least one herniated disc. He sent her home for bed rest She returned to him 3 more times the following week for tension release of the back treatments. This treatment did not help.

Plaintiff returned to Lowes the day after her injury and filed for workmen's compensation benefits. The HR Manager told her that it was between her and Sedgwick. He would write the accident up and send it to Sedgwick. Because she had been to an unauthorized doctor, Lowes would not pay him, but Sedgwick would be in contract with her.

She heard nothing from Sedgwick and returned to the chiropractor.

Four days after the accident, Sedgwick called and plaintiff gave a full and complete statement to Adjuster Moore who said that she would do further investigation.

On May 26, 2014, the plaintiff received the company paperwork to fill out.

On May 30, 2014, Adjuster Moore's supervisor, Darshae (LNU) talked with plaintiff via telephone and informed her that as of the 30th her claim had been closed because an employee had told them that plaintiff had been previously complaining about her back. Plaintiff denied this as she had rarely talked with anyone at Lowes – certainly not about personal problems.

On July 3, 2014, 47 days after the accident, and after repeated attempts to get medical treatment, the plaintiff went to see the HR director. He repeated that she should

5

see Sedgwick. Sedgwick continued to deny medical care and compensation to plaintiff.

12. Plaintiff has been temporarily totally disabled since her accident and has lived in constant back pain almost three years without medical treatment from defendants. She has since been diagnosed at St. Vincent's St. Clair Hospital as suffering from one completely ruptured disc and three bulging discs.  Defendant's actions and the passage of time has exacerbated her condition.

### COUNT TWO: RETALIATORY DISCHARGE

13.     Brown adopts and incorporates by reference all facts, averments, and allegations contained in the foregoing Paragraphs of this Complaint.

14.     On or about May 19, 2014, plaintiff was working within the line and scope of her employment with she received injuries arising out of and in the course of her employment.

15.     As a proximate result of said accident, plaintiff suffered an injury requiring immediate medical treatment.  Plaintiff made a claim for workers' compensation benefits.

16.     That on July 28, 2016, the Plaintiff was ordered by a Dr. Faulkner to return to work.

17.     On August 4, 2016, the plaintiff presented herself to Lowe's in Leeds, and spoke with Jerry Crossley of Human Resources.  After preliminary pleasantry, he asked why she was there.  She presented her "return to work" slip issued by Dr. Faulkner, and at this point he instructed her to enter his office and he shut the door.

18.     He told the plaintiff that she had been fired for "failure to show up for work."

19.     The defendant Lowes did willfully, wantonly, negligently, and wrongfully

6

discharge plaintiff solely because of, and in retaliation for plaintiff's filing of a Worker's

Compensation claim, all in violation of Al. Code 25-5-11.1.  In doing so, defendant has

violated plaintiff's right of due process and right to equal protection under the law.

### COUNT THREE:  OUTRAGE

20.     Brown adopts and incorporates by reference all facts, averments, and

allegations contained in the foregoing Paragraphs of this Complaint.

21.     The defendants, acing in concert, or individually, engaged in the following

acts of outrageous conduct designed to willfully and intentionally inflict severe physical

and emotional damages to the plaintiff:

   a.    Plaintiff was injured on her job on May 19, 2014.  The defendants had
         proper notice of plaintiff's injuries and denied her workmen's
         compensation benefits.  The evidence to deny benefits that was relied
         upon by defendants was not credible and defendants knew it was not
         credible.

   b.    On May 21, 2015, after a year without benefits of compensation or
         medical treatment this Court ruled that plaintiff was entitled to workers'
         compensation benefits, and ordered defendants to provide plaintiff with
         workers' compensation benefits, including medical benefits, as provided
         by law.

   c.    In a mental and physical assault on the plaintiff, the defendants filed a
         completely spurious appeal to the Alabama Court of Civil Appeals.  This
         appeal had no chance of success and was so articulated by the appellate
         court on January 22, 2016.  Defendants then filed a Petition for Writ of
         Mandamus that was denied on May 6, 2016 to further delay benefits and
         harm the plaintiff.  Still the defendants would not comply with court
         orders.  As a result of this willful and malicious conduct the plaintiff filed
         a Motion to Show Cause on June 27, 2016.

   d.    The defendants continued their physical and mental assault on the
         plaintiff by refusing medical benefits, contesting physicians, and relying
         upon "insurance" doctors to thwart treatment of the plaintiff.  One
         "Insurance Doctor" released the plaintiff to return to work without ever
         having medical treatment for her back injuries that had worsened.  When
         plaintiff complied with defendant's doctor's orders and presented herself
         for work, Defendant Lowes told her that she had been discharged long

7

ago due to excessive absenteeism.

e.    It has now been almost three years since the injury, and almost two years since this Court ordered benefits, and still the Plaintiff has not been provided necessary medical care.

f.    Due to the passage of time the deformity of the plaintiff's spine has increased and her pain has remained constant. She lives a medicated life replete with mental and physical anxiety and suffering. Defendants are well aware of the plaintiff's predicament and work constantly to deny her medical care with the goal of inducing plaintiff to settle her claim at a significantly lower amount than to which she is entitled.

22.    The defendants each have willful and selfish reasons for refusing to provide the benefits to which the plaintiff is entitled by law.

a.    Sedgwick administers worker's compensation claims on behalf of Lowes and earns more money from Lowes by extending the claim and denying benefits to injured employees as long as possible.

b.    Lowes makes employees fight for every benefit it provides. As a result, if an employee can possibly avoid filing a workers' compensation claim they do so to keep; their job. By willfully abusing and damaging plaintiffs, Lowes has shown its employees what happens to an individual who is hurt on the job and files a claim. The fewer worker's compensation claims experiences by Lowes results in lower insurance premiums and increases the profit line of Lowes.

c.    Cigna profits by administering the claim representing Lowes and supervising Sedgwick.

23.    The plaintiff avers that the conduct of defendants in failing to abide by this Court's order is part of a pattern and practice of intolerable or abusive conduct relative to injured Lowes employees and more specifically the plaintiff. More particularly, the plaintiff avers that defendants have designed, implemented and carried forward a plan, scheme, pattern and practice of wrongfully denying their employees, namely the plaintiff in particular, benefits under the workers' compensation act. They accomplish their goals

8

by delay, deny and delay benefits. By insisting upon frivolous legal appeals; undue delays; and requiring the injured employee to resort to legal action, defendants gain financially.

24.     The actions of the defendants constitute willful and wanton misconduct that arises to the tort of outrage. Said outrage has been demonstrated repeatedly by the defendants with regard to their treatment of the plaintiff relative to the payment of benefits due and the failure to deny medical treatment for her on-the-job injury.

27.     Plaintiff alleges that the defendants intentionally inflicted severe physical and emotional distress on the plaintiff and this outrage is part of the pattern, scheme and practice as described above.

WHEREFORE, PREMISES CONSIDERED the plaintiff respectfully requests the following:

A.     An immediate order requiring the defendants to afford the plaintiff the proper medical treatment as required by the Alabama Workers' Compensation Act;

B.     An immediate order requiring the defendants pay the plaintiff compensation benefits due plaintiff as provided by the Alabama Worker's Compensation Act;

C.     Upon final hearing of this matter, grant unto the plaintiff permanent partial or permanent total disability benefits as provided by the Alabama Worker's Compensation Act.

D.     Grant unto the plaintiff such other, further and different relief as the court may deem proper under the alleged circumstances.

E.     Allow and award damages, including punitive damages, in the amount of $1,000,000 for pain and mental anguish suffered by plaintiff as a result of her wrongful termination, resultant unemployment, and the defendant's outrageous conduct.

9

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON THE ISSUE OF
RETALITORY DISCHARGE and OUTRAGE**

Dated: this the 17th day of February, 2017.

_____
Tommy Allen French (FRE043)
Attorney for Plaintiff

ROBERT B. FRENCH, JR., P.C.
Post Office Box 680596
Fort Payne, Alabama 35968
Telephone: (256) 845-2250
Fax: (256) 845-4548
E-Mail: rbfrench@bellsouth.net

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February, 2017, I electronically filed the
foregoing with the Clerk of the Court using the AlaFile system which will send notification
of such filing to the following:

Chris Dorough, Esq.  (cdorough@carrallison.com)

I hereby certify that I have mailed by United States Postal Service the document to the
following non-AlaFile participants:

None.

_____
Tommy Allen French (FRE043)
Attorney for Plaintiff

10

# EXHIBIT
## "3"

DOCUMENT 235

ELECTRONICALLY FILED
4/19/2017 7:44 AM
75-CV-2014-900291.00
CIRCUIT COURT OF
ST. CLAIR COUNTY, ALABAMA
ANNETTE MANNING, CLERK

## IN THE CIRCUIT COURT OF ST. CLAIR COUNTY, ALABAMA

SARAH BROWN,                                   )
                                               )
   Plaintiff,                   )
                                               )
v.                                             )
                                               )
LOWES COMPANIES, INC., its                     )     CASE NO. 2014-900291
Agents and any and all Subsidiaries;           )
CIGNA GROUP INSURANCE                           )     <u>ORAL ARGUMENT REQUESTED</u>
COMPANY, INC., its Agents and any              )
and all Subsidiaries, and SEDGWICK             )
CLAIMS MANAGEMENT                               )
SERVICES, INC., its Agents and any             )
and all its Subsidiaries,                      )
                                               )
   Defendants.                  )

### <u>DEFENDANT SEDGWICK CLAIM MANAGEMENT SERVICES, INC.'S MOTION TO SEVER</u>

COMES NOW the Defendant identified in the Complaint as Sedgwick Claims Management Services, Inc., ("Sedgwick"), and pursuant to Rule 21 of the Alabama Rules of Civil Procedure, respectfully requests this Honorable Court to enter an Order severing the workers' compensation and retaliatory discharge claims asserted against Co-Defendant Lowe's Companies, Inc. ("Lowes") from the tort of outrage claim asserted against Lowe's, Cigna Group Insurance ("Cigna")[1], and Sedgwick.  In further support hereof, Sedgwick states as follows:

1.  Plaintiff filed her initial Complaint on August 29, 2014 asserting a workers' compensation claim against all Defendants under Alabama's Workers' Compensation Act.  Sedgwick and Cigna never responded to the Complaint as they were not and are not Plaintiff's employer, and thus no claim for relief could be granted against these

---

[1] The correct Cigna entity is actually Connecticut General Life Insurance Company.

{B2424511}

Defendants.  On February 17, 2017, Plaintiff filed a Motion for Leave to Amend the Complaint to assert claims for the tort of outrage and retaliatory discharge against Lowes, Cigna, and Sedgwick.  (Complaint at Counts II and III, Exhibit "1").

2.      In the tort of outrage claim, Plaintiff alleges Sedgwick engaged in outrageous conduct.  (*Id.* at Count III).  A claim for the tort of outrage requires Plaintiff to prove (1) Sedgwick intended to cause her emotional distress, (2) Sedgwick's conduct was extreme and outrageous, (3) Sedgwick's intentional or reckless conduct caused her emotional distress, and (4) her emotional distress was so severe that no reasonable person could be expected to endure it.  *See, e.g., S.B. v. Saint James School*, 959 So. 2d 72, 93 (Ala. 2006).  For an outrage claim to be actionable in the workers' compensation context, Plaintiff must allege more than "bad faith failure to pay an insurance claim" and more than the defendant "insisting upon its legal rights in a permissible way."  *Stewart v. Matthews Indus., Inc.*, 644 So. 2d 915, 918 (Ala. 1994).  With respect to the tort of outrage claim, Plaintiff only alleges that Sedgwick wrongfully refused medical benefits due and owing to her, and "thwarting treatment" for her thereby causing her mental anguish. (Complaint at ¶ 21).

3.      Rule 21 of the Alabama Rules of Civil Procedure states, in pertinent part, that "[a]ny claim against a party may be severed and proceeded with separately."  Rule 21 affords a trial court two options when a party or claim is misjoined.  Specifically, a court may order that (1) the misjoined parties and claims be dismissed or (2) that the misjoined parties and claims be severed and proceeded with separately.  *Ex Parte Novartis Pharm. Corp.*, 975 So. 2d 297, 304 (Ala. 2007).  When a claim is severed under

Rule 21, a new civil action is established and a completely independent judgment results. *Ex Parte Furnace and Corrosive Svcs., Inc.*, 418 So. 2d 891, 893 (Ala. 1982). Rule 21, therefore, is different from Rule 42(b) of the Alabama Rules of Civil Procedure, which allows courts to order separate trials of claims, issues, or parties. *See* ALA. R. CIV. P. 42. Under Rule 42, judgment on a separate trial is not final, absent a Rule 54(b) order, until all issues and claims have been decided against all parties. Rule 21, however, provides a "true severance" such that all judgments are final and appealable without reference to the proceedings in the severed actions. *See* Committee Comments to ALA. R. CIV. P. 21; *Key v. Robert M. Duke Ins. Agency*, 340 So. 2d 781, 783 (Ala. 1976) (when a claim is severed under Rule 21, a new action is created, "just as if it had never been a part of the original action" and a completely independent judgment results).

4.     Trial courts have broad discretion to add or sever parties or claims where necessary to "serve the ends of justice." *Ex Parte Humana Med'l Corp.*, 597 So. 2d 670, 671 (Ala. 1992) (noting courts have "wide discretion in ordering separate trials and in severing claims").

5.     In the case at bar, Plaintiff's burdens of proof required for her two distinct sets of claims are totally different. Here, the acts or omissions giving rise to her workers' compensation claim, on the one hand, and to her tort of outrage claim, on the other, are entirely independent and the damages and evidence supporting each set of claims are separate and distinct. For example, the workers' compensation claim is based on the purported on-the-job injury and is asserted only against Lowe's and not Sedgwick. The tort of outrage claim, however, is based on Sedgwick's and Cigna's alleged improper

administration of Plaintiff's medical benefits and alleged wrongful conduct in doing so. <u>Tellingly, Sedgwick and Cigna could not be Defendants in the workers' compensation claim because they are not her employer.</u>

6.    Furthermore, the types of recoverable damages are different for the two distinct sets of claims.  Here, Plaintiff's damages in the workers' compensation claim are statutorily based on her medical care and alleged inability to work, while her damages in the tort of outrage claim are purely emotional damages based on her alleged emotional distress and mental anguish.  Plaintiff acknowledges these distinctions when she asserts different causes of action against each Defendant in her Complaint.  (Complaint).

7.    To allow Plaintiff's workers' compensation claim and tort of outrage claims to proceed together in a single action would prejudice Lowe's, Cigna, and Sedgwick by, for example, allowing issues that have no place in a workers' compensation action to be injected into both discovery and trial.  Moreover, the decision-making and analysis of Lowe's workers' compensation third party administrator, Sedgwick, and its communications to the Plaintiff may be relevant to the tort of outrage claim, but have no place in the workers' compensation claim.  Accordingly, the workers' compensation claim should not proceed in the same litigation as the tort of outrage claim.

WHEREFORE, PREMISES CONSIDERED, Defendant Sedgwick Claims Management Services, Inc. respectfully requests this Honorable Court to enter an Order severing Plaintiff's workers' compensation and retaliatory discharge claims from her tort of outrage claim pursuant to Rule 21 of the Alabama Rules of Civil Procedure and to

instruct the Clerk of the Court to docket a separate case/civil action number under which

the tort of outrage claim may proceed.

### ORAL ARGUMENT RESPECTFULLY REQUESTED

Respectfully Submitted,

s/ M. Warren Butler
M. Warren Butler – BUT021
Stephen W. Still, Jr. – STI025
Starnes Davis Florie, LLP
P.O. Box 598512
Birmingham, AL 35259-8512
Telephone:  (205) 868-6000
Fax:  (205) 868-6099
 E-mail:  mwb@starneslaw.com
 E-mail:  sws@starneslaw.com

OF COUNSEL:
Starnes Davis Florie, LLP
Seventh Floor, 100 Brookwood Place
P.O. Box 598512
Birmingham, AL 35259-8512
Telephone:  (205) 868-6000
Fax:  (205) 868-6099

### CERTIFICATE OF SERVICE

        I hereby certify that on _19TH_ day of _April_, 2017, I electronically filed the
foregoing using the Alafile system, which will send electronic notification of such filing
to the following:

Tommy Allen French, Esq.
Robert B. French, Jr., P.C.
P.O. Box 680596
Fort Payne, AL  35968

Chris Dorough, Esq.
Carr Allison
100 Vestavia Parkway
Birmingham, AL  35216

5
{B2424511}

DOCUMENT 255

Charles A. Stewart III, Esq.
Bradley Arant
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104

s/ M. Warren Butler
M. WARREN BUTLER

6

{B2424511}

**EXHIBIT**

DOCUMENT 2

ELECTRONICALLY FILED
4/19/2017 7:44 AM
75-CV-2014-900291.00
CIRCUIT COURT OF
ST. CLAIR COUNTY, ALABAMA
ANNETTE MANNING, CLERK
ST. CLAIR COUNTY, ALABAMA
ANNETTE MANNING, CLERK

## IN THE CIRCUIT COURT OF
## ST. CLAIR COUNTY, ALABAMA

| | |
|---|---|
| SARAH BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.: _____ |
| | ) |
| LOWES HOME CENTERS, LLC., | ) |
| its Agents, Parent Companies or | ) |
| Subsidiaries;  CIGNA HEALTH | ) |
| MANAGEMENT, INC., its Agents | ) |
| Parent Companies or Subsidiaries,  and | ) |
| SEDGWICK  CLAIMS MANAGEMENT | ) |
| SERVICES,INC., its Agents, Parent | ) |
| Companies or Subsidiaries, | ) |
| | ) |
| Defendants. | ) |

### Complaint for Worker's Compensation Benefits

COMES NOW the Plaintiff, Sarah Brown, by the undersigned attorneys and submits her Complaint against the Defendants as follows:

### STATEMENT OF THE PARTIES

1.      Plaintiff Sarah Brown (hereinafter referred to as "Brown"), is an individual over the age of nineteen (19) years and a resident of 3069 Hamilton Court, Pell City, St. Clair County, Alabama.  Brown at all times complained of herein, was an employee of the Defendant Lowe's Home Centers, Inc., or Lowe's Companies, Inc. and was injured during the line and scope of her employment.

2.      Defendant Lowe's Home Centers, LLC. is a limited liability corporation that does business by a variety of names and entities, (hereinafter all referred to as "Lowe's").  It is a foreign corporation of Mooresville, North Carolina, and was transacting business in the State of Alabama at all times complained herein.  This defendant employed plaintiff and was subject to the Alabama Workmen's Compensation Act.

DOCUMENT 2

3.     Defendant CIGNA Group Insurance Company, Inc., or CIGNA Health
Management, Inc. is a corporation that does business under a variety of names and entities
(hereinafter referred to as "CIGNA") with its principal place of business being Philadelphia,
Pennsylvania, and is authorized and doing business in this state, and at all times mentioned
herein was, and is now, the worker's compensation insurance carrier for defendant employer
Lowe's.

4.     Defendant Sedgwick Claims Management Services, Inc. is a corporation with its
principal place of business being Memphis, Tennessee, and authorized and qualified to do
business in Alabama. It was the claims management company that investigated and denied the
plaintiff's claim for workmen's compensation.

## COUNT ONE - WORKER'S COMPENSATION

5.     The Plaintiff repeats, realleges and incorporates by reference the preceding
allegations as if more fully set out herein.

6.     On or about the **27th. day of January, 2012,** Brown was employed by Defendant
Lowe's as a Package Handler.   Later she was promoted to an Outdoor Power Equipment
Specialist at wages of $16.05 per hour.

7.     On the **19th day of May, 2014,** while so employed and engaged in the business
of Lowe's, while acting within the line and scope of her employment, Brown suffered an injury
which arose out of and in the course of her employment that resulted in the disability hereinafter
alleged, by lifting an air conditioner that weighed more than 125 pounds while in an awkward
lifting position.

8.     The plaintiff was aware that she had injured her back and immediately reported
her accident to her supervisor.

9.     The parties are subject to, and their relationship is governed by, the provisions of
the Alabama Workmen's Compensation Act. All parties are subject to the jurisdiction of the

DOCUMENT 2

Circuit Court of St. Clair County, Alabama.

## *EVENTS OF INJURY*

10.     The Plaintiff repeats, realleges and incorporates by reference all of the preceding allegations as if more fully set out herein.

11.     Brown sustained an injury, arising out of and during the course of her employment by Lowes as follows:

a.     Plaintiff's job required her to have certain skills including lifting up to 75 pounds. On Monday, Wednesday and Friday she unloaded the morning trucks. The trucks contained lawn mowers, air conditioners and overall store freight. Her job was to remove the freight out of the truck-trailer, unload the pallet and distribute the products to the retail bins or shelves.

b.     Three weeks out of the month she was required to report to work at 4:00 A.M. Frequently, she would not have help until 8:00 A.M. Many times, by the time the help arrived, plaintiff had unloaded the truck.

c.     Plaintiff complained regularly to the department manager that she needed help. She complained to the zone manager and nothing happened. She continued to work each day until 1:30 or 2:30. Often she worked more than 40 hours a week.

d.     Eventually, she was assigned a pregnant helper by the department manager who was on vacation most of the time. When he was there he did not help her very often. The most assistance he would give her with the heavy work was about 2 hours. The department continued to be grossly understaffed.

e.     On Monday, **May 19, 2014,** the plaintiff arrived at work at 4:00 A.M. as the only employee in her department.   At 7:30 A.M. the pregnant associate arrived.  Brown had already handled all the small merchandise.

f.     It was time to move the heavy products. The pregnant woman could not help. Therefore, plaintiff was forced to move the bigger merchandise. Other department employees had worked all night taking inventory. There was no one to ask for help.

g.      Plaintiff's goal was to place one air conditioner in a top bin and bring down other units to a lower level. She had to use an elevator machine similar to a fork lift - an order picker. The pregnant woman was acting as plaintiff's spotter and blocking off the isles.

h.      At approximately 8:30 A.M. plaintiff was 10' up on isle 24, at the air conditioner's top stock bin. She had to unload an 18,500 BTU Frigidaire Air Conditioner weighing 125+ pounds. She was on a squatting position and stooping and turning to place the unit in the top bin. As she was rotating, she felt a sudden "pop" in her back. When she stood up, she felt immediate pain and numbness down the back of her legs.

i.      She lowered the order picker and told the spotter that she had felt a "pop" in her back and a burning sensation in her legs. The spotter was on the phone to her son's day care because he was sick.

j.      At that point the Human Resources Manager came up and asked plaintiff what was wrong as she was in obvious pain. Plaintiff told him what had happened and that she needed to go to a doctor. He asked her if it was work related. She said yes. He told her to keep him informed and promptly walked away.

k.      Plaintiff sent a text message to her zone manager and told her what had happened. She then clocked out at 10:20 A.M. and went to see a chiropractor at 10:45. He did x-rays and range of motion tests. He told the plaintiff that she was too inflamed for him to help her. The chiropractor performed a shock treatment and said that the x-rays indicated at least one herniated disc. He sent her home for bed rest. She returned to him 3 more times the following week for tension release of the back treatments. This treatment did not help. Plaintiff felt worse and worse each time she got off the table.

l.      Plaintiff returned to Lowes on May 20th and filed for workmen's compensation.

The HR Manager told her that it was between her and Sedgwick. He would write the accident up and send it to Sedgwick. Because she had been to an unauthorized doctor, Lowes would not pay him, but Sedgwick would be in contract with her. When she heard nothing from Sedgwick she returned to the chiropractor.

m.     **May 23, 2014,** plaintiff was called by Sedgwick and told that Sarah Moore was her claims adjuster. Plaintiff gave a full and complete statement to Moore who said that she would do further investigation.

n.     **May 26, 2014,** the plaintiff received her paper work to fill out.

o.     **May 30, 2014,** Moore's supervisor, Darshae (LNU) talked with plaintiff via telephone and informed her that as of the 30th her claim had been closed because an employee had told them that plaintiff had been previously complaining about her back. Plaintiff denied this assertion as she had rarely talked with anyone at Lowes.

p.     **July 3, 2014,** plaintiff went to see the HR director. He repeated that she should see Sedgwick. Representatives of Sedgwick continued to deny medical care and compensation to plaintiff.

12.     Plaintiff has been temporarily totally disabled since her accident and his lived in constant back pain since that time. Being forced to go to the emergency room due to pain, doctors there confirmed that the plaintiff is suffering from one herniated disc and three bulging discs.

**WHEREFORE, PREMISES CONSIDERED** the plaintiff respectfully requests the following:

A.     An immediate order requiring the defendants to afford the plaintiff the proper medical treatment as required by the Alabama Worker's Compensation Act as she is in dire need of surgical attention;

B.     An immediate order requiring the defendants pay the plaintiff compensation benefits due plaintiff as provided by the Alabama Worker's Compensation Act;

C.     Upon final hearing of this matter grant unto the plaintiff permanent partial or permanent total disability benefits as provided by the Alabama Worker's Compensation Act.

D.     Grant unto the plaintiff such other, further and different relief, as the court may deem proper under the alleged circumstances.

Respectfully Submitted this the 21st day of August, 2014.

ROBERT B. FRENCH, JR., P.C.

s/Robert B. French, Jr.
Attorney for the Plaintiff

Before me, the undersigned authority, personally appeared Sarah Brown, who being by me first duly sworn, states that she has read the foregoing complaint and the facts and matters alleged therein are true.

Sarah Brown, Affiant - Plaintiff

**SWORN** and **SUBSCRIBED** to before me this the 21st day of August, 2014.

Notary Public
My Commission Exp.: 2/5/17

ROBERT B. FRENCH, JR., P.C.
308 Alabama Ave. SW
Fort Payne, AL 35967

256 845-2250
256 845-4548 facsimile
rbfrench@bellsouth.net

# EXHIBIT
## "4"

DOCUMENT 278

ELECTRONICALLY FILED
5/9/2017 11:07 AM
75-CV-2014-900291.00
CIRCUIT COURT OF
ST. CLAIR COUNTY, ALABAMA
ANNETTE MANNING, CLERK

## IN THE CIRCUIT COURT OF ST. CLAIR COUNTY, ALABAMA
## PELL CITY DIVISION

BROWN SARAH,                         )
Plaintiff,                           )
                                     )
V.                                   ) Case No.:      CV-2014-900291.00
                                     )
LOWES HOME CENTERS, LLC,             )
CIGNA HEALTH MANAGEMENT ,INC,        )
SEDGWICK   CLAIMS   MANAGEMENT       )
SERVICES, INC,                       )
Defendants.                          )

### ORDER

MOTION TO SEVER, filed by Defendant Sedgwick Claims Management Services, Inc., and joined by Defendant Lowe's Home Centers, LLC is hereby GRANTED.  Pursuant to Rule 21 of the Alabama Rules of Civil Procedure, the Court concludes that complete severance of the Plaintiff's Outrage claims against Defendants (Count III of Plaintiff's Amended Complaint) is proper. The following is therefore ordered:

The Clerk is directed to forthwith open a new civil action number for the Plaintiff's Outrage claims against Defendants.  A copy of the Amended Complaint, filed on March 22, 2017 in CV-2014-900291 (and subsequently transferred to this action) is to be transferred as the original pleading in the new civil action.

Within seven days of this Order, the Plaintiff is directed to pay the filing fee, in an amount to be determined by the Clerk, for her claims in the new action, plus a fee for a jury trial demand.

**DONE this 9th day of May, 2017.**

                              /s/ BILLY R. WEATHINGTON JR.
                              **CIRCUIT JUDGE**

# EXHIBIT
## "5"



**ALABAMA SJIS CASE DETAIL**

PREPARED FOR: ALICE BARRON

alacourt.com

County: **75**   Case Number: CV-2017-000071.00   Court Action:
Style: **SARAH BROWN V. LOWES HOME CENTERS, LLC ET AL**

Real Time

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 5/17/2017 | 1:54 PM | FILE | FILED THIS DATE: 05/17/2017        (AV01) | BAB |
| 5/17/2017 | 1:54 PM | EORD | E-ORDER FLAG SET TO "Y"        (AV01) | BAB |
| 5/17/2017 | 1:54 PM | ASSJ | ASSIGNED TO JUDGE: BILL WEATHINGTON   (AV01) | BAB |
| 5/17/2017 | 1:54 PM | SCAN | CASE SCANNED STATUS SET TO: N        (AV01) | BAB |
| 5/17/2017 | 1:54 PM | TDMN | BENCH/NON-JURY TRIAL REQUESTED        (AV01) | BAB |
| 5/17/2017 | 1:54 PM | STAT | CASE ASSIGNED STATUS OF: ACTIVE        (AV01) | BAB |
| 5/17/2017 | 1:54 PM | ORIG | ORIGIN: INITIAL FILING        (AV01) | BAB |
| 5/17/2017 | 1:55 PM | C001 | C001 PARTY ADDED: BROWN SARAH        (AV02) | BAB |
| 5/17/2017 | 1:55 PM | C001 | INDIGENT FLAG SET TO: N        (AV02) | BAB |
| 5/17/2017 | 1:55 PM | C001 | LISTED AS ATTORNEY FOR C001: FRENCH ROBERT BRYANT | BAB |
| 5/17/2017 | 1:55 PM | C001 | LISTED AS ATTORNEY FOR C001: FRENCH TOMMY ALLEN | BAB |
| 5/17/2017 | 1:55 PM | C001 | C001 E-ORDER FLAG SET TO "N"        (AV02) | BAB |
| 5/17/2017 | 2:07 PM | D001 | D001 PARTY ADDED: LOWES HOME CENTERS, LLC  (AV02) | BAB |
| 5/17/2017 | 2:07 PM | D001 | INDIGENT FLAG SET TO: N        (AV02) | BAB |
| 5/17/2017 | 2:07 PM | D001 | LISTED AS ATTORNEY FOR D001: DOROUGH CHRISTOPHER | BAB |
| 5/17/2017 | 2:07 PM | D001 | LISTED AS ATTORNEY FOR D001: STEWART CHARLES ANDR | BAB |
| 5/17/2017 | 2:07 PM | D001 | LISTED AS ATTORNEY FOR D001: DRUHAN BULLOCK VIRGI | BAB |
| 5/17/2017 | 2:07 PM | D001 | D001 E-ORDER FLAG SET TO "N"        (AV02) | BAB |
| 5/17/2017 | 2:08 PM | D002 | D002 PARTY ADDED: CIGNA HEALTH MANAGEMENT, INC | BAB |
| 5/17/2017 | 2:08 PM | D002 | INDIGENT FLAG SET TO: N        (AV02) | BAB |
| 5/17/2017 | 2:08 PM | D002 | LISTED AS ATTORNEY FOR D002: MURPHY GRACE ROBINSO | BAB |
| 5/17/2017 | 2:08 PM | D002 | CERTIFIED MAI ISSUED: 05/17/2017 TO D002  (AV02) | BAB |
| 5/17/2017 | 2:08 PM | D002 | D002 E-ORDER FLAG SET TO "N"        (AV02) | BAB |
| 5/17/2017 | 2:08 PM | D003 | D003 PARTY ADDED: SEDGWICK CLAIMS MANAGEMENT SERVI | BAB |
| 5/17/2017 | 2:08 PM | D003 | INDIGENT FLAG SET TO: N        (AV02) | BAB |
| 5/17/2017 | 2:08 PM | D003 | LISTED AS ATTORNEY FOR D003: BUTLER MICHAEL WARRE | BAB |
| 5/17/2017 | 2:08 PM | D003 | LISTED AS ATTORNEY FOR D003: STILL STEPHEN WRIGHT | BAB |
| 5/17/2017 | 2:08 PM | D003 | D003 E-ORDER FLAG SET TO "N"        (AV02) | BAB |
| 5/17/2017 | 2:11 PM | ESCAN | SCAN - FILED 3/22/2017 - COMPLAINT | BAB |
| 5/17/2017 | 2:12 PM | COST | COST BILL PREPARED FOR C001 | BAB |
| 5/17/2017 | 3:16 PM | ESCAN | SCAN - FILED 5/17/2017 - COMPLAINT | BAB |
| 5/17/2017 | 3:16 PM | ESCAN | SCAN - FILED 5/17/2017 - COMPLAINT | BAB |
| 5/17/2017 | 3:16 PM | ESCAN | SCAN - FILED 5/17/2017 - COMPLAINT | BAB |
| 5/17/2017 | 3:16 PM | ESCAN | SCAN - FILED 5/17/2017 - COMPLAINT | BAB |

 *END OF THE REPORT*

# EXHIBIT
## "6"



alacourt.com™
The Alabama Trial Court System at your desk

| LogOff

Name: STEPHANIE MEGGS    User ID: STEMEG    Last login Date: 5/24/2017 2:42:46 PM

| Monitor Case    | Print Case

| Main Menu

**Search**
- Party Search
- Case Lookup
- UTC Lookup
- SSN Enforcement
- Attorney Search
- Warrant Search
- Witness Search
- Docket Search
- HotSheet™

**Tracking**
- Attorney Tracker
- Case Monitor
- Name Tracker
- Reminders

**Desktop**
- My Alacourt

**Administration**
- Update User Info

| County: | 75-ST. CLAIR - PELL CITY | Case Number: CV-2017-00007 1.00 | Judge: | BRW-BILLY R. WEATHINGTON JR. | Trial Type: | B-BENCH |
| Style: | SARAH BROWN V. LOWES HOME CENTERS, LLC ET AL | | Filed: | 05/17/2017 | Status: | A-ACTIVE |
| Type: | WORKMANS COMP | | Court Action: | | Track: | |

Case  DHR  Parties  Consolidated Case Action Summary  Images  Financial  Motions  Entire Case

### Case Information

| | | | |
|---|---|---|---|
| County: | 75-ST. CLAIR - PELL CITY | Case Type: | COMP-WORKMANS COMP |
| Case Number: | CV-2017-000071.00 | Track: | |
| Style: | SARAH BROWN V. LOWES HOME CENTERS, LLC ET AL | Case Status: | A-ACTIVE |
| Filed: | 05/17/2017 | Plaintiffs: | 1 |
| Judge: | BRW-BILLY R. WEATHINGTON JR. | Defendants: | 3 |
| Trial Type: | B-BENCH | # of Trial days: | 0 |
| Appellate CaseNumber: | 0 | # of Lien: | 0 |

### Case Type

COMP-WORKMANS COMP

### Court Action

| | |
|---|---|
| Disposition Judge : | |
| Court Action: | |
| Court Action Date: | |
| Judgment For: | |
| Revised Judgment Date: | |
| Date Trial Began But No Verdict 1: | |
| Date Trial Began But No Verdict 2: | |
| Mistrial: | |
| Appeal Date: | |

### Damages

| | |
|---|---|
| Amount: | $0.00 |
| Compensatory: | $0.00 |
| Punitive: | $0.00 |
| General: | $0.00 |
| None: | |
| Payment Frequency: | |
| Pay To: | |
| Cost Paid By: | |

### Comments

Comment 1:
Comment 2:

### Appeal Information

| | | |
|---|---|---|
| Appeal Date: | Appeal Case Number: | Appeal Court: |
| Appeal Status: | Origin Of Appeal: | |

1 of 1

5/24/2017 5:34 PM

ELECTRONICALLY FILED
3/22/2017 12:30 PM
75-CV-2014-900291.00
CIRCUIT COURT OF
ST. CLAIR COUNTY, ALABAMA
ANNETTE MANNING, CLERK

## IN THE CIRCUIT COURT OF
## ST. CLAIR COUNTY, ALABAMA

| | | |
|---|---|---|
| SARAH BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: <u>CV 2014-900291</u> |
| | ) | |
| LOWES COMPANIES, INC., | ) | |
| its Agents and any and all Subsidiaries; | ) | |
| CIGNA GROUP INSURANCE | ) | |
| COMPANY, INC. its Agents and any | ) | |
| and all Subsidiaries,  and SEDGWICK | ) | |
| CLAIMS MANAGEMENT SERVICES, | ) | |
| INC., its Agents and any and all its | ) | |
| Subsidiaries, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>AMENDED</u> COMPLAINT FOR WORKER'S COMPENSATION BENEFITS

## RETALITORY DISCHARGE and WILLFUL OUTRAGEOUS CONDUCT

**COMES NOW** the Plaintiff, Sarah Brown, by her attorneys of record, and submits her **Amended** complaint against the defendants:

### STATEMENT OF THE PARTIES

1.      Plaintiff Sarah Brown (hereinafter referred to as "Brown"), is an individual over the age of nineteen (19) years and a resident of 3069 Hamilton Court, Pell City, St. Clair County, Alabama. Brown at all times complained of herein, was an employee of the Defendant Lowe's Companies, Inc. and was injured during the line and scope of her employment.

2.      Defendant Lowe's Companies, Inc. a corporation (hereinafter referred to as "Lowe's"), is a foreign domestic corporation of Mooresville, North Carolina transacting

1

business in the State of Alabama at all times complained of herein. This defendant employed the plaintiff and was subject to the Alabama Workmen's Compensation Act.

3.     Defendant CIGNA Group Insurance Company, Inc., is a corporation with its principal place of business being Philadelphia, Pennsylvania, and authorized and doing business in this state, and at all times mentioned herein was, and is now, the worker's compensation insurance carrier for defendant employer Lowe's Companies, Inc.

4.     Defendant Sedgwick Claims Management Services, Inc. is a corporation with its principal place of business being Memphis, Tennessee, and authorized and qualified to do business in Alabama. It was the claims management company that investigated and denied the plaintiffs claim for workmen's compensation benefits.

### COUNT ONE: WORKER'S COMPENSATION

5.     The plaintiff repeats, realleges and incorporates by reference the preceding allegations as if more fully set out herein.

6.     On or about the 27th day of January 2012, Brown was employed by Defendant Lowe's as a Package Handler. Later she was promoted to an Outdoor Power Equipment Specialist at wages of $16.05 per hour.

7.     On the 19th day of May, 2014, while so employed and engaged in the business of Lowe's, and while acting within the line and scope of her employment, Brown suffered an injury that arose out of, and during the course of her employment, which resulted in the disability hereinafter alleged. She was injured lifting an air conditioner that weighed more than 125 pounds while in an awkward lifting position.

8.     The plaintiff was aware that she had injured her back and immediately reported her accident to her supervisor.

2

9.      The parties' relationship is governed by, the provisions of the Alabama Workmen's Compensation Act. All parties are subject to the jurisdiction of the Circuit Court of St. Clair County, Alabama.

### EVENTS OF INJURY

10.     The plaintiff repeats, realleges and incorporates by reference all of the preceding allegations as if more fully set out herein.

11.     Brown sustained an injury as follows:

Plaintiff's job required her to have certain skills including lifting up to 75 pounds. On Monday, Wednesday and Friday she unloaded the morning trucks. The trucks contained lawn mowers, air conditioners and overall store freight. Her job was to bring the freight out of the truck-trailer, unload the pallet, and distribute the products onto the retail shelves. Three weeks out of the month she was required to report to work at 4:00 A.M. Frequently, she would not have help until 8:00 A.M. Very often, by the time the other employees arrived to help, plaintiff had the truck(s) unloaded.

Plaintiff complained to the department manager that she needed help. She complained to the zone manager. Nothing happened. She continued to work each day until 1:30 or 2:30 P.M., often working more than 40 hours a week.

On rare occasions, the department manager assisted plaintiff with the heavy work. The department manager assigned the plaintiff a helper who was very pregnant and relatively useless.

On Monday, May 19, 2014, the plaintiff arrived for work at 4:00 A.M. She was the only employee in her department. By 7:30 A.M. when the pregnant woman arrived, Brown had handled all the smaller merchandise. Although it was time to move the heavy products,

3

the pregnant woman could not help. The plaintiff had to singlehandedly move the bigger merchandise. There was no one available to ask for help.

Plaintiff's goal was to place one air conditioner on a top shelf and bring down another unit to a lower level. She had to use an elevator machine, similar to a forklift, called an "order picker." The pregnant woman was supposed to act as a spotter blocking the isles.

At approximately 8:30 A.M. the plaintiff was on the order picker, 10' up on isle 24, at the air conditioner's top stock bin. She had to unload an 18,500 BTU Frigidaire Air Conditioner weighing 125 pounds. She was in a squatting position turning to place the unit on top of stock on the bin shelf. As she was rotating, she felt a sudden "pop" in her back. When she stood up, she felt immediate pain radiating down the back of her legs.

She lowered the order picker and told the pregnant spotter that she had felt a "pop" in her back and a burning sensation in her legs. This employee was on the phone trying to contact her son's day care because he was sick. Apparently, she did not hear plaintiff nor understand the problem. She had been inattentive during the entire episode.

At that point the Human Resources Manager came up and asked plaintiff what was wrong as she was in obvious pain. Plaintiff told him what had happened and that she needed to go to a doctor. Even though she had carefully explained what had just happened, he asked her if it was work related. She said yes. He told her to keep him informed, and walked away. He did not give her instructions as to filling out an accident report nor tell her a company- approved physician for her to visit. He acted as if there had been no accident nor injury.

Plaintiff sent a text message to her zone manager outlining what had happened. She

then clocked out at 10:20 A.M. and went to see a chiropractor at 10:45 A.M. He did x-rays and range of motion tests. He told the plaintiff that she was too inflamed for him to help her.

The chiropractor performed a shock treatment and said that the x-rays indicated at least one herniated disc. He sent her home for bed rest She returned to him 3 more times the following week for tension release of the back treatments. This treatment did not help.

Plaintiff returned to Lowes the day after her injury and filed for workmen's compensation benefits. The HR Manager told her that it was between her and Sedgwick. He would write the accident up and send it to Sedgwick. Because she had been to an unauthorized doctor, Lowes would not pay him, but Sedgwick would be in contract with her.


She heard nothing from Sedgwick and returned to the chiropractor.

Four days after the accident, Sedgwick called and plaintiff gave a full and complete statement to Adjuster Moore who said that she would do further investigation.

On May 26, 2014, the plaintiff received the company paperwork to fill out.

On May 30, 2014, Adjuster Moore's supervisor, Darshae (LNU) talked with plaintiff via telephone and informed her that as of the 30th her claim had been closed because an employee had told them that plaintiff had been previously complaining about her back. Plaintiff denied this as she had rarely talked with anyone at Lowes – certainly not about personal problems.

On July 3, 2014, 47 days after the accident, and after repeated attempts to get medical treatment, the plaintiff went to see the HR director. He repeated that she should

5

see Sedgwick. Sedgwick continued to deny medical care and compensation to plaintiff.

12. Plaintiff has been temporarily totally disabled since her accident and has lived in constant back pain almost three years without medical treatment from defendants. She has since been diagnosed at St. Vincent's St. Clair Hospital as suffering from one completely ruptured disc and three bulging discs. Defendant's actions and the passage of time has exacerbated her condition.

### COUNT TWO: RETALIATORY DISCHARGE

13. Brown adopts and incorporates by reference all facts, averments, and allegations contained in the foregoing Paragraphs of this Complaint.

14. On or about May 19, 2014, plaintiff was working within the line and scope of her employment with she received injuries arising out of and in the course of her employment.

15. As a proximate result of said accident, plaintiff suffered an injury requiring immediate medical treatment. Plaintiff made a claim for workers' compensation benefits.

16. That on July 28, 2016, the Plaintiff was ordered by a Dr. Faulkner to return to work.

17. On August 4, 2016, the plaintiff presented herself to Lowe's in Leeds, and spoke with Jerry Crossley of Human Resources. After preliminary pleasantry, he asked why she was there. She presented her "return to work" slip issued by Dr. Faulkner, and at this point he instructed her to enter his office and he shut the door.

18. He told the plaintiff that she had been fired for "failure to show up for work."

19. The defendant Lowes did willfully, wantonly, negligently, and wrongfully

6

discharge plaintiff solely because of, and in retaliation for plaintiff's filing of a Worker's

Compensation claim, all in violation of Al. Code 25-5-11.1. In doing so, defendant has

violated plaintiff's right of due process and right to equal protection under the law.

COUNT THREE:  OUTRAGE

20.      Brown adopts and incorporates by reference all facts, averments, and

allegations contained in the foregoing Paragraphs of this Complaint.

21.      The defendants, acing in concert, or individually, engaged in the following

acts of outrageous conduct designed to willfully and intentionally inflict severe physical

and emotional damages to the plaintiff:

a.      Plaintiff was injured on her job on May 19, 2014. The defendants had proper notice of plaintiff's injuries and denied her workmen's compensation benefits. The evidence to deny benefits that was relied upon by defendants was not credible and defendants knew it was not credible.

b.      On May 21, 2015, after a year without benefits of compensation or medical treatment this Court ruled that plaintiff was entitled to workers' compensation benefits, and ordered defendants to provide plaintiff with workers' compensation benefits, including medical benefits, as provided by law.

c.      In a mental and physical assault on the plaintiff, the defendants filed a completely spurious appeal to the Alabama Court of Civil Appeals. This appeal had no chance of success and was so articulated by the appellate court on January 22, 2016. Defendants then filed a Petition for Writ of Mandamus that was denied on May 6, 2016 to further delay benefits and harm the plaintiff. Still the defendants would not comply with court orders. As a result of this willful and malicious conduct the plaintiff filed a Motion to Show Cause on June 27, 2016.

d.      The defendants continued their physical and mental assault on the plaintiff by refusing medical benefits, contesting physicians, and relying upon "insurance" doctors to thwart treatment of the plaintiff. One "Insurance Doctor" released the plaintiff to return to work without ever having medical treatment for her back injuries that had worsened. When plaintiff complied with defendant's doctor's orders and presented herself for work, Defendant Lowes told her that she had been discharged long

7

ago due to excessive absenteeism.

e.    It has now been almost three years since the injury, and almost two years since this Court ordered benefits, and still the Plaintiff has not been provided necessary medical care.

f.    Due to the passage of time the deformity of the plaintiff's spine has increased and her pain has remained constant. She lives a medicated life replete with mental and physical anxiety and suffering. Defendants are well aware of the plaintiff's predicament and work constantly to deny her medical care with the goal of inducing plaintiff to settle her claim at a significantly lower amount than to which she is entitled.

22.    The defendants each have willful and selfish reasons for refusing to provide the benefits to which the plaintiff is entitled by law.

a.    Sedgwick administers worker's compensation claims on behalf of Lowes and earns more money from Lowes by extending the claim and denying benefits to injured employees as long as possible.

b.    Lowes makes employees fight for every benefit it provides. As a result, if an employee can possibly avoid filing a workers' compensation claim they do so to keep; their job. By willfully abusing and damaging plaintiffs, Lowes has shown its employees what happens to an individual who is hurt on the job and files a claim. The fewer worker's compensation claims experiences by Lowes results in lower insurance premiums and increases the profit line of Lowes.

c.    Cigna profits by administering the claim representing Lowes and supervising Sedgwick.

23.    The plaintiff avers that the conduct of defendants in failing to abide by this Court's order is part of a pattern and practice of intolerable or abusive conduct relative to injured Lowes employees and more specifically the plaintiff. More particularly, the plaintiff avers that defendants have designed, implemented and carried forward a plan, scheme, pattern and practice of wrongfully denying their employees, namely the plaintiff in particular, benefits under the workers' compensation act. They accomplish their goals

by delay, deny and delay benefits.  By insisting upon frivolous legal appeals; undue delays; and requiring the injured employee to resort to legal action, defendants gain financially.

      24.    The actions of the defendants constitute willful and wanton misconduct that arises to the tort of outrage.  Said outrage has been demonstrated repeatedly by the defendants with regard to their treatment of the plaintiff relative to the payment of benefits due and the failure to deny medical treatment for her on-the-job injury.

      27.    Plaintiff alleges that the defendants intentionally inflicted severe physical and emotional distress on the plaintiff and this outrage is part of the pattern, scheme and practice as described above.

      WHEREFORE, PREMISES CONSIDERED the plaintiff respectfully requests the following:

      A.    An immediate order requiring the defendants to afford the plaintiff the proper medical treatment as required by the Alabama Workers' Compensation Act;

      B.    An immediate order requiring the defendants pay the plaintiff compensation benefits due plaintiff as provided by the Alabama Worker's Compensation Act;

      C.    Upon final hearing of this matter, grant unto the plaintiff permanent partial or permanent total disability benefits as provided by the Alabama Worker's Compensation Act.

      D.    Grant unto the plaintiff such other, further and different relief as the court may deem proper under the alleged circumstances.

      E.    Allow and award damages, including punitive damages, in the amount of $1,000,000 for pain and mental anguish suffered by plaintiff as a result of her wrongful termination, resultant unemployment, and the defendant's outrageous conduct.

9

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON THE ISSUE OF
RETALITORY DISCHARGE and OUTRAGE**

Dated: this the 17th day of February, 2017.

Tommy Allen French (FRE043)
Attorney for Plaintiff

ROBERT B. FRENCH, JR., P.C.
Post Office Box 680596
Fort Payne, Alabama  35968
Telephone: (256) 845-2250
Fax: (256) 845-4548
E-Mail:  rbfrench@bellsouth.net

### CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February, 2017, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Chris Dorough, Esq.  (cdorough@carrallison.com)

I hereby certify that I have mailed by United States Postal Service the document to the following non-AlaFile participants:

None.

Tommy Allen French (FRE043)
Attorney for Plaintiff

10



| LogOff

⋮ Main Menu

Name: STEPHANIE MEGGS       User ID: STEMEG       Last login Date: 5/24/2017 2:42:46 PM

⌐ Monitor Case          ⌐ Print Case

**Search**
⊠ Party Search
⊠ Case Lookup
⊠ UTC Lookup
⊠ SSN Enforcement
⊠ Attorney Search
⊠ Warrant Search
⊠ Witness Search
⊠ Docket Search
⊠ HotSheet™

**Tracking**
⊠ Attorney Tracker
⊠ Case Monitor
⊠ Name Tracker
⊠ Reminders

**Desktop**
⊠ My Alacourt

**Administration**
⊠ Update User Info

County:                    Case          Judge:      BRW-BILLY R.   Trial
        75-ST. CLAIR - PELL CITY   Number:   CV-2017-000071.00   WEATHINGTONType: B-BENCH
                                                         JR.

Style:   SARAH BROWN V. LOWES HOME CENTERS, LLC ET AL    Filed:   05/17/2017   Status:A-ACTIVE

Type:    WORKMANS COMP                          Court Action:           Track:

Case   DHR   Parties   Consolidated Case Action Summary   Images   Financial   Motions   Entire Case

### Consolidated Case Action Summary 75-CV-2017-000071.00

| Date | Time | Code | Comments | Operator |
|------|------|------|----------|----------|
| 05/17/2017 | 01:54:17 PM | FILE | FILED THIS DATE: 05/17/2017 (AV01) | BAB |
| 05/17/2017 | 01:54:18 PM | EORD | E-ORDER FLAG SET TO "Y" (AV01) | BAB |
| 05/17/2017 | 01:54:19 PM | ASSJ | ASSIGNED TO JUDGE: BILL WEATHINGTON (AV01) | BAB |
| 05/17/2017 | 01:54:20 PM | SCAN | CASE SCANNED STATUS SET TO: N (AV01) | BAB |
| 05/17/2017 | 01:54:21 PM | TDMN | BENCH/NON-JURY TRIAL REQUESTED (AV01) | BAB |
| 05/17/2017 | 01:54:22 PM | STAT | CASE ASSIGNED STATUS OF: ACTIVE (AV01) | BAB |
| 05/17/2017 | 01:54:23 PM | ORIG | ORIGIN: INITIAL FILING (AV01) | BAB |
| 05/17/2017 | 01:55:14 PM | C001 | C001 PARTY ADDED: BROWN SARAH (AV02) | BAB |
| 05/17/2017 | 01:55:15 PM | C001 | INDIGENT FLAG SET TO: N (AV02) | BAB |
| 05/17/2017 | 01:55:16 PM | C001 | LISTED AS ATTORNEY FOR C001: FRENCH ROBERT BRYANT | BAB |
| 05/17/2017 | 01:55:17 PM | C001 | LISTED AS ATTORNEY FOR C001: FRENCH TOMMY ALLEN | BAB |
| 05/17/2017 | 01:55:18 PM | C001 | C001 E-ORDER FLAG SET TO "N" (AV02) | BAB |
| 05/17/2017 | 02:07:34 PM | D001 | D001 PARTY ADDED: LOWES HOME CENTERS, LLC (AV02) | BAB |
| 05/17/2017 | 02:07:35 PM | D001 | INDIGENT FLAG SET TO: N (AV02) | BAB |
| 05/17/2017 | 02:07:36 PM | D001 | LISTED AS ATTORNEY FOR D001: DOROUGH CHRISTOPHER | BAB |
| 05/17/2017 | 02:07:37 PM | D001 | LISTED AS ATTORNEY FOR D001: STEWART CHARLES ANDR | BAB |
| 05/17/2017 | 02:07:38 PM | D001 | LISTED AS ATTORNEY FOR D001: DRUHAN BULLOCK VIRGI | BAB |
| 05/17/2017 | 02:07:39 PM | D001 | D001 E-ORDER FLAG SET TO "N" (AV02) | BAB |
| 05/17/2017 | 02:08:11 PM | D002 | D002 PARTY ADDED: CIGNA HEALTH MANAGEMENT ,INC | BAB |



# EXHIBIT
## "7"



**AlaFile E-Notice**

75-CV-2014-900291.00

Judge: BILLY R. WEATHINGTON JR.

To:  STILL STEPHEN WRIGHT JR.
     sws@starneslaw.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF ST. CLAIR COUNTY, ALABAMA

SARAH BROWN V. LOWES HOME CENTERS, LLC ET AL
75-CV-2014-900291.00

A court action was entered in the above case on 5/24/2017 9:49:14 AM

ORDER

[Filer: ]

Disposition:    GRANTED
Judge:          BRW

Notice Date:    5/24/2017 9:49:14 AM

ANNETTE MANNING
CIRCUIT COURT CLERK
ST. CLAIR COUNTY, ALABAMA
1815 COGSWELL AVENUE, SUITE 217
PELL CITY, AL, 35125

205-338-2511

DOCUMENT 285

ELECTRONICALLY FILED
5/24/2017 9:49 AM
75-CV-2014-900291.00
CIRCUIT COURT OF
ST. CLAIR COUNTY, ALABAMA
ANNETTE MANNING, CLERK

## IN THE CIRCUIT COURT OF ST. CLAIR COUNTY, ALABAMA
## PELL CITY DIVISION

|                                        |   |                        |
|----------------------------------------|---|------------------------|
| BROWN SARAH,                           | ) |                        |
| Plaintiff,                             | ) |                        |
|                                        | ) |                        |
| V.                                     | ) | Case No.:  CV-2014-900291.00 |
|                                        | ) |                        |
| LOWES HOME CENTERS, LLC,               | ) |                        |
| CIGNA HEALTH MANAGEMENT ,INC,          | ) |                        |
| SEDGWICK   CLAIMS   MANAGEMENT         | ) |                        |
| SERVICES, INC,                         | ) |                        |
| Defendants.                            | ) |                        |

## ORDER

NOTICE OF VOLUNTARY DISMISSAL OF DEFENDANT CIGNA filed by BROWN SARAH is hereby GRANTED. Therefore, it is hereby ORDERED that Defendant Cigna is DISMISSED, WITHOUT PREJUDICE.

It is further ORDERED that all other claims against all other defendants are not dismissed and remain pending.

**DONE this 24th day of May, 2017.**

/s/ BILLY R. WEATHINGTON JR.
**CIRCUIT JUDGE**